IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WELLS FARGO BANK, as Trustee of the Joe Dicesare 2008 Irrevocable Life Insurance Trust I and as Trustee of the Joe Dicesare 2008 Irrevocable Life Insurance Trust II, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 10-CV-703-TCK-TLW |
| v. | ) ) | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Midas Life Settlements LLC's ("Midas") Motion to Intervene (Doc. 24); Plaintiff Wells Fargo Bank's ("Wells Fargo") Application for Leave to Deposit Money (Doc. 29); Defendant The Lincoln National Life Insurance Company's ("Lincoln") Opposed Motion for Leave to Amend to Assert Counterclaim (Doc. 37); and Lincoln's Motion for Relief Under Federal Rule of Civil Procedure 56(d) ("Rule 56(d)") (Doc. 61).

**I.  Background**

In August 2008, Lincoln issued Policy No. JJ7042792 and Policy No. JJ7042844 (the "Policies") upon the life of Joe Dicesare ("Dicesare"), with each policy providing for death benefits of ten million dollars. The Policies were issued to two trusts formed by Dicesare – namely, the Joe Dicesare 2008 Irrevocable Life Insurance Trust I ("Trust I") and the Joe Dicesare 2008 Irrevocable Life Insurance Trust II ("Trust II") (collectively "the Trusts"). Patricia Dicesare, Dicesare's spouse, is the sole beneficiary to Trust I, and Dicesare's surviving children are the beneficiaries of Trust II. To fund the purchase of the Policies, the trustee of the Trusts, Wells Fargo, entered into two loan

agreements with Churchill Finance LLC ("Churchill") ("Loan Agreements"), whereby Wells Fargo obtained two loans in the aggregate amount of $1,998,000 from Churchill. In conjunction with these loans, the Policies were collaterally assigned to Churchill as security for the loans. Churchill subsequently transferred its interest in the loans, including the collateral assignments, to Midas. Upon issuing the policies, Lincoln received premiums for the first two years of coverage totaling $1,998,000.

Dicesare died on January 31, 2010 as the result of injuries suffered in a house fire. Thereafter, Wells Fargo submitted claims on both Policies, seeking payment of the death benefit for distribution to Dicesare's family. By letter dated September 28, 2010, Lincoln denied the claims and purported to rescind the Policies. Lincoln stated that it was rescinding the Policies because the applications submitted by Dicesare contained material misrepresentations concerning his financial condition. (*See* Sept. 28, 2010 Letter, Ex. B to Pl.'s App. for Leave to Deposit Money, at 2 ("The information obtained reflects that Dicesare's financial status was misrepresented on the policy applications. Had Lincoln been aware of the Dicesares' true financial status, these policies would not have been issued. Based on these material misrepresentations, we are rescinding both of the above-referenced policies and refunding all premiums.").)

Lincoln also tendered two checks (the "Premium Checks"), dated September 24, 2010, to the Trusts in the aggregate amount of $2,105,121.64, comprising the first two years of premiums paid on the Policies plus interest. The Premium Checks were tendered on the condition that Wells Fargo forego the right to claim a death benefit under the Policies. (*See id.* ("The rescission of the policies and the return to you of the premium paid on the policies cancels both policies, and your cashing of the premium refund checks is an acknowledgment that the policies are not in force.").)

2

To date, these checks have not been accepted. Nor have the loans been repaid to Midas, as Midas contends that the aggregate amount due on the loans is $2,490,912.56, inclusive of interest and fees.[1] Midas has sought to have the Premium Checks negotiated to it, as the lender that financed the Policies. However, this has not occurred because Lincoln maintains that the assignment of the checks to Midas would result in a waiver of Wells Fargo's claims under the Policies. As a result of Lincoln's purported rescission of the Policies, Wells Fargo brought suit against Lincoln, asserting claims for breach of contract and breach of the duty of good faith and fair dealing.

## II. Motion to Intervene (Doc. 24)

Midas seeks to intervene in this matter by asserting third-party claims against: "(1) Wells Fargo, in its capacity of trustee of the Trusts, for breach of the Loan Agreements; and (2) Lincoln, for its failure to honor its obligations under the Policies." (Mot. to Intervene 3.) Midas states that it asserts the second claim "as a collateral assignee and third-party beneficiary of the Policies." (*Id.*) Midas also seeks the immediate recovery of the $2,105,121.64 tendered to Wells Fargo in conjunction with Lincoln's purported rescission of the Policies, arguing that it is "entitled to these funds as both a creditor of the Trusts and a collateral assignee of the Policies." (*Id.*)

Intervention is governed by Federal Rule of Civil Procedure 24(a) ("Rule 24(a)"), which provides for two types of intervention – namely, intervention of right and permissive intervention. Under Rule 24(a), a movant is entitled to intervene as of right if: (1) the movant claims an interest relating to the property or transaction that is the subject of the action; (2) the disposition of the litigation may, as a practical matter, impair or impede the movant's interest; and (3) the existing

---

[1] This number represents the aggregate amount due as of date of the filing of Midas's Motion to Intervene.

3

parties do not adequately represent the movant's interest. *See* Fed. R. Civ. P. 24(a)(2); *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). A court may grant permissive intervention pursuant to Rule 24(b) when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Permissive intervention is within the sound discretion of the Court. *Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992). Further, when deciding whether to grant permissive intervention, a court will consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.*

In this case, Midas meets the requirements for permissive intervention.[2] Midas argues that, as creditor of the Trusts secured by the Policies, it has an interest in any funds tendered to the Trusts by Lincoln in connection with the Policies, "including the premiums tendered by Lincoln in connection with its attempted rescission." (Reply at 2.) "Midas seeks to intervene in this action to assert its own rights with regard to these funds[.]" (*Id.*) Midas's claims therefore share common questions of law and fact with the main action – namely, questions regarding the validity of the Policies and whether the recission of such Policies by Lincoln was proper. Further, there is no apparent prejudice to the existing parties or undue delay as a result of Midas's intervention. The Court therefore exercises its discretion and allows Midas to intervene in this action.

### III. Application for Leave to Deposit Money (Doc. 29)

Wells Fargo seeks leave to deposit the $2,105,121.64 tendered by Lincoln with the Court pending resolution of this matter "contingent on the stipulation of the parties and/or an order of the

---

[2] Because the Court grants Midas's motion based on permissive intervention, it need not address whether Midas would be entitled to intervention as a matter of right pursuant to Rule 24(a). *See S.E.C. v. Gordon*, 2009 WL 2252119, at *3 n.1 (N.D. Okla. 2009) (July 29, 2009) (J. Eagan) (noting same).

4

Court that depositing the funds into the Court's registry . . . in no way and to no degree compromises any claims or causes of action made by [Wells Fargo] herein or the right to pursue such claims or causes." (Application for Leave to Deposit Money 2.)

> Federal Rule of Civil Procedure 67(a) ("Rule 67(a)") states:
>
> Depositing Property. If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party--on notice to every other party and by leave of court--may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

As stated by the Tenth Circuit, "[t]he language of Rule 67 leaves to the discretion of the district court the decision as to whether to permit the deposit of funds in court." *Garrick v. Weaver*, 888 F.2d 687, 694 (10th Cir. 1989). "The Rule 67 procedure provides a place for safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties of the parties." *In re Dept. of Energy Stripper Well Exemption Litig.*, 124 F.R.D. 217, 218-19 (D. Kan. 1989) (citing *Prudential Insur. Co. of Am. v. BMC Indus., Inc.,*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986)); *see also LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992) ("It is well-settled that Rule 67, like all of the Federal Rules of Civil Procedure, shall not abridge, enlarge or modify any substantive right.") (internal quotations omitted).

Lincoln objects to Wells Fargo's motion, arguing that use of Rule 67 in this case would effectively modify Lincoln's substantive rights, which is not permitted. The Court agrees, as Wells Fargo's request is not a "run-of-the mill" Rule 67 request. The tender of the Premium Checks was made on the condition that Wells Fargo forgo any right to claim a death benefit under the Policies. Wells Fargo seeks to avoid this condition by making the deposit of the Premium Checks into the

5

Court "contingent on the stipulation of the parties and/or an order of the Court that depositing the funds into the Court's registry pursuant to Rule 67 in no way and to no degree compromises any claims or causes of action made by [Wells Fargo] herein or the right to pursue such claims or causes." (Application for Leave to Deposit Money 2.) Wells Fargo's request would therefore alter the relationship and duties of the parties by circumventing the condition placed on the Premium Checks. Therefore, the Court declines to permit deposit of the funds into the Court's registry under such circumstances, and Wells Fargo's Application for Leave to Deposit Money is denied.

## IV. Motion for Leave to Amend to Assert Counterclaim (Doc. 37)

Lincoln seeks leave to amend its Answer to assert a counterclaim for declaratory judgment. Specifically, Lincoln's counterclaim seeks entry of judgment declaring that the Policies are void because Dicesare made materially false and/or fraudulent representations in his application for the Policies. Lincoln's motion states that Wells Fargo opposes the request to amend, but Wells Fargo did not file a response brief outlining the reasons for such objection.

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." The request to amend was filed in a timely manner and the proposed counterclaim will not result in prejudice or undue delay. Therefore, for good cause shown, and absent any argument from Wells Fargo, Lincoln's motion is granted.

## V. Motion for Relief Under Rule 56(d) (Doc. 61)

Wells Fargo filed a Motion for Partial Summary Judgment (Doc. 38) on March 23, 2011, seeking summary judgment on its breach of contract claim. Contemporaneous with its response in opposition to Wells Fargo's motion, Lincoln moved the Court to either deny Wells Fargo's Motion

6

for Partial Summary Judgment or defer consideration of the motion until the conclusion of the discovery period. Wells Fargo did not file an objection to Lincoln's motion.

Rule 56(d) states as follows:

When Facts are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Motions for additional time under Rule 56(d) are "broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871-72 (5th Cir. 2006). "The general principle of [Rule 56(d)] is that summary judgment should be refused where a nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (internal quotations and citations omitted). Rule 56(d) does not operate automatically, however. "Its protections must be invoked and can be applied only if a party satisfies certain requirements." *Id.* Specifically, a party seeking to defer a decision on summary judgment must provide an affidavit identifying the facts not available, why those facts cannot be presented currently, what steps have been taken to obtain such facts, and how additional time will allow the party to obtain such facts and rebut the motion for summary judgment. *See Valley Forge Ins. Co. v. Heath Care Mgmt. Partners, L.T.D.*, 616 F.3d 1086, 1096 (10th Cir. 2010).

Lincoln argues that it has not had a reasonable opportunity to complete discovery and develop facts in opposition to Wells Fargo's Motion for Partial Summary Judgment. In support of its position, Lincoln has submitted the affidavit of Christopher B. Woods ("Woods"), counsel for

7

Lincoln. Therein, Woods provides a thorough description of Lincoln's discovery efforts, including what discovery has been received, what discovery is outstanding, and a list of depositions that have yet to be conducted. Woods' affidavit identifies facts currently unavailable to Lincoln, including information relating to Dicesare's financial condition and representations, Dicesare's tax returns, Dicesare's efforts to obtain the Policies, Dicesare's employment history, the identity of other persons with knowledge of Dicesare's financial condition, whether third persons other than agents shared in the commissions earned on the Policies, and efforts to review and verify the information provided in Dicesare's application for the Policies. The affidavit adequately explains why the above facts cannot be currently presented, the steps Lincoln has taken to obtain this information, and how additional time will permit Lincoln to obtain this information and rebut Wells Fargo's Motion for Partial Summary Judgment. Accordingly, the Court finds good cause to grant Lincoln's motion for relief under Rule 56(d). Wells Fargo's Motion for Partial Summary Judgment (Doc. 38) is therefore denied without prejudice to refiling after the close of discovery.

## VI.    Conclusion

For the reasons outlined above, the Court GRANTS Midas's Motion to Intervene (Doc. 24), and Midas is directed to file its Complaint in Intervention within ten (10) days of the date of this Order. The Court also GRANTS Lincoln's Motion for Leave to Amend to Assert Counterclaim (Doc. 37), and Lincoln is directed to file its counterclaim within ten (10) days of the date of this Order. Lincoln's Motion for Relief Under Rule 56(d) (Doc. 61) is GRANTED, and Wells Fargo's Motion for Partial Summary Judgment (Doc. 38) is denied without prejudice to refiling after the close of discovery. Finally, Wells Fargo's Application for Leave to Deposit Money (Doc. 29) is DENIED.

**SO ORDERED this 7th day of June, 2011.**

*[signature: Terence C. Kern]*

**TERENCE C. KERN
UNITED STATES DISTRICT JUDGE**