IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., )<br>AS TRUSTEE OF THE JOE )<br>DICESARE 2008 IRREVOCABLE )<br>LIFE INSURANCE TRUST I AND )<br>AS TRUSTEE OF THE JOE )<br>DICESARE 2008 IRREVOCABLE )<br>LIFE INSURANCE TRUST II, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE LINCOLN NATIONAL LIFE )<br>INSURANCE COMPANY, a )<br>foreign insurance corporation, )<br>)<br>Defendant. ) | CASE NO.  10CV-703 TCK TLW | |

| |
|---|
| MIDAS LIFE SETTLEMENTS, LLC, )<br>a Delaware limited liability company, )<br>)<br>   Third-Party Plaintiff-Intervenor, )<br>)<br>v. )<br>)<br>WELLS FARGO BANK, N.A., )<br>AS TRUSTEE OF THE JOE )<br>DICESARE 2008 IRREVOCABLE )<br>LIFE INSURANCE TRUST I AND )<br>AS TRUSTEE OF THE JOE )<br>DICESARE 2008 IRREVOCABLE )<br>LIFE INSURANCE TRUST II, and )<br>THE LINCOLN NATIONAL LIFE )<br>INSURANCE COMPANY, a )<br>foreign insurance corporation, )<br>)<br>   Third-Party Defendants. ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION IN LIMINE
CONCERNING ISSUES CONCERNING MISCELLANEOUS ISSUES**

Through its Second Motion in Limine, Defendant seeks to prevent the jury from learning of significant evidence - evidence surrounding and placing in context the actions of its underwriter prior to issuance of the policies on Joe Dicesare's life, as well as the actions of its employees which led to the denial of policy benefits to Dicesare's survivors. The information addressed in Defendant's Second Motion is probative of core issues involved in this case, and Plaintiff would be severely and improperly prejudiced by its exclusion.

Relevant evidence, meaning evidence which has <u>any</u> tendency to make the existence of any fact of consequence more or less probable, is admissible, barring the likelihood of *unfair* prejudice, confusion of the issues, or misleading the jury (Rules 401, 402, 403 of Federal Rules of Evidence).

A broad view of admissibility is appropriate at the pre-trial stage. Unless it is clear, even outside all likely contexts in which the evidence could be offered at trial, that the matters in question would clearly violate the Rules of Evidence, or unquestionably result in unfair prejudice, the Court should prudently withhold judgment and make rulings of admissibility at the time the evidence is presented.

As will be shown more fully herein, the information which Defendant seeks to prevent the jury from receiving is clearly probative of facts of great consequence, and not improperly prejudicial to Defendant's right to a fair trial.

One aspect that deserves mention is Defendant's statement suggesting that Plaintiff has engaged in improper, questionable tactics in the prosecution of this case is both offensive and unsupported by any facts. Without reference to a single instance, Defendant impugns the professional integrity of Plaintiff's counsel with its statement that "(T)hroughout discovery and in its briefing, Plaintiff has demonstrated a willingness to advance its case improperly by means of

2

irrelevant, immaterial and unduly prejudicial evidence and argument." Plaintiff's only response to this is to consider this as the written equivalent of one pounding loudly on counsel's table when one has neither the facts nor the law on one's side.

## ARGUMENTS AND AUTHORITIES

**1.     "Improper argument concerning policies owned by, and Lincoln's litigation with, Cowboy Athletics, Inc."**

Lincoln neglected to advise this Court of significant parallels between the instant ligation and the facts surrounding the policies it issued in the "Gift of a Lifetime" program intended to support the OSU athletic program. As with the Joe Dicesare situation, the OSU policies were multi-million-dollar policies - in that case, $10 million per participant. Also as here, those policies were all issued on the lives of older-aged people, generally over 70 years of age.

Defendant's entire defense in this matter depends upon proving the materiality of financial status in the issuance of these high-dollar policies for older applicants. If, contrary to Defendant's claims, financial status is not a significant factor in the decision whether to issue coverage, a necessary element of the material misrepresentation defense cannot be proven and that defense must fail. Upon information and belief, at least some of the people Lincoln agreed to insure in that matter do not come close to meeting its stated net worth and income criteria for issuance of such policies. Richard Danel, for instance, is not believed by Plaintiff to be a wealthy man - since the 1950's, he has worked as a barber at the Campus Corner barber shop in Stillwater. Janet Evans, it is believed, does not possess anything like the level of wealth that Lincoln contends must exist for it to issue coverage of $10 million or above.

Evidence that these non-wealthy people were issued coverage by Lincoln, and further, that

Lincoln has continued to keep that coverage in force after becoming aware of their financial status, supports Plaintiff's position that the financial information alleged to have been misrepresented was not material and therefore cannot serve as a defense to a claim on the policies. Evidence of Lincoln's choice to ignore an applicant's financial condition in one case while relying on it as a defense in another is probative as to the materiality of that fact.

Defendant contends that if it had known that Joe Dicesare was not a wealthy man, it would never have issued the $20 million of coverage on his life. Evidence that not only did Lincoln issue multi-million dollar policies on the lives of other elderly people who do not meet its financial criteria, but that Lincoln is currently engaged in a legal battle less than 100 miles away to maintain that coverage in place is highly probative of the lack of materiality of an applicant's financial standing. Should jurors believe that such financial standing is in fact, not material, and that Lincoln does indeed issue and maintain such coverage to people without wealth, Defendant's material misrepresentation defense will not stand.

**2.     "Other STOLI policies"**

Perhaps the single thing agreed upon between Plaintiff and Defendant is the fact that the Joe Dicesare policies were not STOLIs. However, the fact is that almost immediately after the applications and supporting documentation reached Lincoln, its computers automatically generated a red flag for IOLI - Investor-owned life insurance - an acronym essentially synonymous with STOLI. This red flag was known to Michael Janulewicz during underwriting. For jurors to grasp the significance of this red flag, it is necessary that they have some understanding of STOLI and IOLI practices.

Additionally, Lincoln's prior experience with STOLI and IOLI schemes is relevant in terms

of the knowledge of potential misrepresentations that underwriters gained thereby, and the issue of whether any reliance placed upon the representations in Dicesare's applications was reasonable. If any such reliance was unjustified given other information in Lincoln's possession, regardless of the source of that information, the material misrepresentation defense must fail as a matter of law, as reasonable or justifiable reliance is a prerequisite for that defense to stand.

What evidence, if any, regarding STOLI or IOLI may be offered at trial is yet to be determined; what is clear is that evidence of Defendant's prior experience with such schemes is probative of issues at the core of the affirmative defense of material misrepresentation and should not be precluded in limine.

### 3. "Documents at Jordan Carreira's deposition"

Defendant itself confirms and a request was made for its Chief Underwriter and expert witness, Jordan Carreira to bring to his deposition any documents he reviewed in the course of his review. Defendant also confirms that he failed to do so. What Defendant has failed to advise this Court is that Carreira testified that he had not even bothered to read the entire deposition of Michael Janulewicz despite knowing he was going to render expert testimony. In fact, Carreira testified that it was only in "the last few days" before his deposition that he bothered to "skim" through Janulewicz' deposition, reading only those portions he found "interesting" (Deposition of Jordan Carreira, attached hereto as Exhibit A, pp.32-33).

Evidence that Carreira refused to bring documents to his depositions that were not simply requested in good faith, but which would have related to his case review and development of expert opinions in this matter, is probative of his bias and demonstrates an attempt to thwart legitimate discovery by Plaintiff's counsel. The absence of a subpoena for these documents does not prevent

5

one from arriving at the conclusion that his lack of cooperation with counsel for Lincoln's insureds is indicative of an effort to prevent Plaintiff's counsel from conducting legitimate discovery. This is, again, all probative of a bias and lack of forthrightness on the part of an expert the Defendant apparently intends to rely upon to support its defense. The jury is entitled to receive evidence probative of Carreira's bias and his in-litigation efforts to skew the results of this case.

**4.     "Respective counsel of the parties" and "Relative wealth of the parties"**

Plaintiff will not make improper reference to either of these topics and presumes that Defendant's witnesses and counsel will provide the same assurances.

## CONCLUSION

The evidence Defendant seeks to have excluded from presentation to the jury includes information that is relevant and probative on issues touching on the affirmative defense of material misrepresentation. This evidence is not unduly or improperly prejudicial to Defendant, as well.

Therefore, Plaintiff prays that Defendant's Second Motion in Limine Concerning Miscellaneous Issues be denied.

                                                Respectfully submitted,
                                                BONHAM & HOWARD, P.L.L.C.

By:   /s/  Andrew B. Morsman
        Andrew B. Morsman, OBA #10911
        Gene C. Howard, OBA #4395
        15 W. 6th St., Ste. 2066
        Tulsa, OK 74119
        918-744-7440
        918-744-9358 (fax)

J. Ted Bonham, OBA #946
Land Mark Towers West
3555 N.W. 58th St., Ste. 1000
Oklahoma City, OK 73112
405-943-6650
405-943-6655 (fax)

Clark O. Brewster, OBA #1114
Guy A. Fortney, OBA #17027
BREWSTER & DE ANGELIS
2617 E. 21st Street
Tulsa, OK 74114
918-742-2021
918-742-2197 (fax)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 9th of November, 2011, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing.  The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Philipp Smaylovsky
Michael Sean Burrage
Clinton Derek Russell
Terry M. Thomas
Christopher B. Woods
Elliot P. Anderson

/s/ Andrew B. Morsman